#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FAIR AMERICAN INSURANCE AND REINSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No. 16-CV-53-TCK-FHM ) |
| KYLE LESLIE STEWART, M.D., AMY K. NORDHUES, and TERRY L. WINK, | ) ) ) |
| Defendants. | ) ) |

### OPINION AND ORDER

Before the Court are the Motion to Dismiss filed by Defendants Amy K. Nordhues and Terry L. Wink (Doc. 13)[1] and Plaintiff Fair American Insurance and Reinsurance Company's ("FAIRCO") Motion for Summary Judgment (Doc. 58).

**I.   Factual Background[2]**

On April 24, 2013, Amy K. Nordhues ("Nordhues") entered into a psychiatrist/patient relationship with Dr. Kyle Leslie Stewart ("Stewart"), who was a deacon at her church. Nordhues testified that, during the last few months of their relationship, she began feeling like Stewart "was crossing boundaries physically and emotionally." (Nordhues Dep. 93:1-2.) During their last four sessions, Nordhues and Stewart were unclothed, Stewart fondled her, and Nordhues performed oral sex on Stewart. The doctor/patient relationship ended on or around July of 2014.

---

[1] Defendant Kyle Leslie Stewart, M.D. filed an answer to Plaintiff's Complaint for Declaratory Judgment (Doc. 15) and did not join the motion to dismiss.

[2] In this section, the Court includes facts from the summary judgment record. Where necessary in its ruling on the motion to dismiss, the Court limits its analysis to the appropriate evidence.

On November 6, 2014, Stewart filed a Voluntary Surrender of License in Lieu of Prosecution ("Surrender"). Therein, Stewart admitted to having an inappropriate relationship with a client identified as A.N.L. and being guilty of: (1) engaging in predatory sexual behavior; (2) engaging in dishonorable or immoral conduct likely to deceive or harm; (3) engaging in sexual physical conduct with a patient; (4) committing an act of sexual abuse, misconduct, or exploitation; and (5) abusing his position of trust by coercion, manipulation, or fraudulent misrepresentation. (Compl., Ex. F.)

On December 9, 2014, counsel for Nordhues, Mark Edwards ("Edwards"), sent a demand letter to Stewart asserting numerous types of medical malpractice that occurred throughout their doctor/patient relationship. Edwards stated that "you [Stewart] used her weaknesses and vulnerabilities, you mishandled the transference counter-transference phenomenon for your own purposes, you immediately misdiagnosed Mrs. Nordhues with multiple personalities and you actually named those parts after your mother, your father and your middle name, just to name a few, in therapy." (Resp. to Mot. for Summ. J., Ex. 1.) The demand letter does not describe in detail the sexual contact between Nordhues and Stewart but does state that Stewart manipulated her by telling her he loved her, rubbing her feet, and having "physical contact" with her during sessions.

On December 26, 2014, Nordhues filed a Petition in the District Court of Tulsa County, Oklahoma, alleging claims for medical malpractice, breach of fiduciary duty, and punitive damages against Stewart ("Nordhues Action"). The petition in the Nordhues Action does not use the phrases sexual misconduct or sexual exploitation. The petition alleges that Stewart:

> a. . . . negligently and carelessly manipulated the emotions of plaintiff in order to gain control over plaintiff and mishandled the transference and counter-transference phenomena which arose out of their professional relationship.
> b. . . . negligently and carelessly failed to treat, or improperly treated, plaintiff, an individual who was suffering from material psychological problems.
> c. . . . negligently and carelessly entered into improper and unprofessional

>
> dual relationships with the plaintiff during the period of treatment.
> d. . . . negligently conducted or handled the termination of the professional therapeutic relationship with plaintiff, ultimately terminated that relationship improperly, and/or failed to assist her in the obtainment of other professional treatment in accordance with accepted therapeutic procedure or practice.
> e. . . . negligently undertook to treat plaintiff, a patient who, under these circumstances, had psychological problems which were beyond defendant's competency to treat.
> f. . . . negligently failed to refer plaintiff to another more competent professional person for proper treatment.
> g. . . . negligently maintained or negligently failed to maintain appropriate professional boundaries in the parties' professional relationship.
> h. . . . failed to divulge in a reasonable manner to plaintiff sufficient information to enable plaintiff, his patient, to give or withhold said plaintiff's consent to the course of treatment in fact followed by defendant.
> i. . . . negligently failed to report or self-report his status as an impaired physician and/or to seek appropriate treatment for his condition from, colleagues, other physicians or health care providers, and/or the Board of Registration in Medicine. In connection with his professional relationship with plaintiff, defendant did not possess the requisite emotional, mental, or physical faculties to care, treat, and/or provide appropriate psychiatric services to the plaintiff.

(Resp. to Mot. For Summ. J., Ex. C.) As required by Oklahoma law in medical negligence cases, Nordhues attached an affidavit from an expert certifying that Stewart's treatment fell below the relevant standard of care. The affidavit does not mention a sexual relationship.

In June of 2015, Stewart filed Chapter 7 Bankruptcy in the Western District of Oklahoma. On November 23, 2015, Nordhues and another past patient of Stewart, Terry Wink ("Wink"), received Orders for Modification of Automatic Stay permitting them to litigate their claims against Stewart in state court. In one bankruptcy filing, an attorney other than Edwards described Wink's claim as one for "sexual exploitation." Wink was not aware this was filed on her behalf or that her claim was described in that manner. Stewart received a Chapter 7 discharge.

On December 28, 2015, Edwards sent a demand letter on behalf of Wink. The letter states that Stewart treated Wink from 1996 until Stewart's "unexpected retirement" in 2014. The letter

3

makes similar allegations to those in the previous letter sent by Edwards on behalf of Nordhues, including that "you [Stewart] used her weaknesses and vulnerabilities, you mishandled the transference counter-transference phenomenon for your own purposes, you misdiagnosed Mrs. Wink with multiple personalities and you actually named those parts in therapy." (Pls.' Resp. To Def.'s Mot. For Summ. J., Ex. 4.)   Again, the demand letter does not describe in detail the sexual relationship between Wink and Stewart but does state that Stewart manipulated her by telling her he loved her, rubbing her shoulders and feet, and having physical contact with her during sessions.

In a deposition given in this case, Wink testified in greater detail about the sexual nature of the relationship.  Beginning in February of 2000, Wink began having sexual intercourse with Stewart on at least a monthly basis for the next fourteen years.  He lengthened her appointments to two hours.  If she missed an appointment, Stewart came to her house and knocked on the door.  On the one occasion she let him in, he took her clothes off and they had sex.  Although she did not let him in again, she testified that he came to her house 30 or 40 times when she missed appointments.  Her last appointment was the last week before "the medical board came." (Wink Dep. 57:11.)  Wink described her sexual encounters with Stewart as non-consensual.

On February 1, 2016 (after Wink sent her demand letter but before Wink filed suit in state court), FAIRCO filed the Complaint for Declaratory Judgment before this Court (Doc. 2) against Nordhues, Wink, and Stewart pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. The Complaint asserts that the Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and that "the matter is ripe for adjudication because an actual and justiciable controversy exists among the parties."  (Compl. ¶ 8.)

In its Complaint, FAIRCO alleges that it issued Claims-Made Psychiatrists' Professional and Business Liability Policy No. IN-FCO01-033311137 ("Policy") to Stewart for the policy period January 1, 2014 to January 1, 2015. The Policy contains a "Retroactive Date" of January 1, 2007, and "Retroactive Date" is defined as the first day on which coverage applies. The liability limits in the Policy are $500,000 per claim and $1,500,000 in the aggregate, subject to a $25,000 sublimit for sexual misconduct ("SMS"), which provides:

> C.  In the event **Sexual Misconduct** is alleged against an **Insured** at any time, either in a complaint, during discovery, at trial, or otherwise, any and all causes of action alleged or arising out of the same or related courses of **Psychiatric Services** shall be subject to the **Insurer's** sublimit of liability of $25,000 as set forth in Item 4(d) of the DECLARATIONS. The total limit of the **Insurer's** liability under this policy for all **Damages** arising out of such **Claim** shall not exceed the foregoing sublimit and the **Insurer** shall have no obligation to undertake the defense of, nor continue to defend, any **Suit** or **Claim** after such limit has been exhausted.

(Compl., Ex. A.) "Sexual Misconduct" is defined in the Policy as follows:

> FF.  **Sexual Misconduct** means any type of actual, alleged, attempted or proposed physical touching, contact, or activity or attempt threat, suggestion or proposal thereof by an **Insured** or any other person for whom an **Insured** may be legally liable which could be considered sexual in nature and/or inappropriate to any **Psychiatric Services** being provided with or to:
>
> (1) Any former or current patient or client of any interest; or
> (2) Any relative of or person who regularly resides with any said patient or client; or
> (3) Any person with whom said patient or client or relative has an affectionate personal relationship.

(*Id.*)

The Policy contains two relevant exclusions. Exclusion H provides that the Policy "does not apply to . . . Liability for . . . punitive, multiplied or exemplary damages" ("Exclusion H") (*Id*.) Exclusion K states that the "Policy does not apply to . . . any Claim . . . arising out of or in connection with any dishonest, fraudulent, criminal, maliciously or deliberately wrongful acts or

5

omissions, errors or violations of law committed by an Insured" ("Exclusion K") (*Id.*) The Policy also contains an "Other Insurance" provision ("OI Provision"), which discusses FAIRCO's coverage in relation to any other insurance policies possessed by the insured. (*Id.*)

In its Complaint for Declaratory Judgment, FAIRCO seeks the following eight declarations:

Nordhues Action:

1.  FAIRCO has no duty to indemnify Stewart for any damages and no obligation to pay damages or a judgment rendered against Stewart due to application of Exclusion K.

2.  FAIRCO has no obligation to pay a punitive damages judgment against Stewart due to application of Exclusion H.

3.  If Exclusion K does not apply and FAIRCO owes coverage for any non-punitive damages, FAIRCO's liability is limited to $25,000 based on the SMS.

Wink Claim:[3]

1.  FAIRCO has no duty to indemnify Stewart and no obligation to pay damages or a judgment rendered against Stewart due to application of Exclusion K.

2.  FAIRCO has no obligation to pay a punitive damages judgment against Stewart due to application of Exclusion H.

3.  If Exclusion K does not apply and FAIRCO owes coverage, FAIRCO's liability is limited to $25,000 based on the SMS.

---

[3] At the time FAIRCO filed its Complaint, Wink had not yet filed her state court action. Thus, the Complaint refers to the "Wink Claim" and the "Nordhues Action."

4. FAIRCO has no obligation to indemnify Stewart or pay damages or a judgment to the extent Wink seeks damages as a result of a medical incident that took place prior to January 1, 2007, due to application of the Retroactive Date.[4]

5. FAIRCO has no obligation to indemnify Stewart or pay damages or a judgment to the extent the FAIRCO Policy is "excess" over other coverage available to Stewart due to application of the OI Provision in the FAIRCO Policy.[5]

On February 16, 2016, Wink filed a petition in the District Court of Tulsa County, alleging claims against Stewart for medical malpractice, breach of fiduciary duty, and outrage ("Wink Action"). Again, the petition does not use the phrases sexual misconduct or sexual exploitation. Instead, the petition in the Wink Action outlines the identical breaches of the standard of care quoted above from the Nordhues petition. (Resp. to Mot. for Summ. J., Ex. 5 at ¶12(a)-(I).) As required by Oklahoma law in medical negligence cases, Wink attached an affidavit from an expert certifying that Stewart's treatment fell below the relevant standard of care. The affidavit does not mention sexual misconduct. The Court refers to the underlying cases collectively as the "State Court Actions."

---

[4] Unlike Nordhues's allegations, Wink's allegations include conduct by Stewart occurring prior to January 1, 2007.

[5] Stewart was insured by Physicians Liability Insurance Company ("PLICO") under Policy No. 501341 ("PLICO Policy") during a portion of Wink's treatment by Stewart from January 1, 1991 to July 1, 2004. (*See* Mot. for Summ. J., Exs. 8 & 9.)

7

## II.   Patients' Motion to Dismiss

The DJA provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The party seeking a declaratory judgment pursuant to § 2201(a) must overcome two hurdles. *Surefoot L.C. v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). First, the plaintiff must demonstrate the existence of an "actual controversy." *Id.* The first hurdle is jurisdictional and is reviewed de novo on appeal. *Id.*[6] Second, "even where a constitutionally cognizable controversy exists, a plaintiff "must convince the court to exercise its jurisdiction" under the DJA based on "a number of case-specific factors." *Id; see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("The DJA gives federal courts competence to declare rights but does not impose a duty to do so."). The second question "involves a discretionary assessment of disparate, often incommensurate, and case-specific concerns" and is reviewed for abuse of discretion. *Id*.

Defendants Wink and Nordhues ("Patients") moved to dismiss FAIRCO's Complaint for Declaratory Judgment on grounds that (1) FAIRCO cannot satisfy the "actual controversy" requirement (*see* Mot. to Dismiss at I.A); (2) FAIRCO has not suffered an "injury in fact" (*see id.* at I.B); (3) FAIRCO has failed "to state a claim for relief" because it fails to allege an "actual,

---

[6] Because the "case of actual controversy" language incorporates the Article III "case or controversy" requirement, the DJA is "procedural only" and "does not itself confer jurisdiction on a federal court where none otherwise exists." *MedImmune v. Genentech*, 549 U.S. 118, 126–27 (2007).

justiciable controversy" (*see id.* at II); and, alternatively, (4) the Court should decline to exercise jurisdiction because the relevant factors weigh against issuing a declaratory judgment (*see id.* at III). The Court addresses the first three arguments, all of which are properly characterized as jurisdictional, in Part A below.[7] Because FAIRCO has demonstrated jurisdiction, the Court also addresses the discretionary factors in Part B below.

### A. Jurisdictional Issues

Patients argue FAIRCO cannot demonstrate an "actual controversy" under the DJA because the petitions in the State Court Actions "incontrovertibly show they do not state claims for sexual misconduct." (Mot. to Dismiss 5.) For the same or similar reasons, Patients argue FAIRCO lacks standing and has not suffered any injury in fact because it is requesting "a declaratory judgment on the application of an insurance policy to claims that do not actually exist." (*Id.* 6.) For the same or similar reasons, Patients contend FAIRCO is asking for an "advisory opinion on purely hypothetical facts." (*Id.*) Patients launch a "factual attack" on the Complaint and attach the petitions in the State Court Actions as evidence in support of their motion to dismiss.[8]

---

[7] Although couched as arising under Federal Rule of Civil Procedure 12(b)(6) (*see* Mot. to Dismiss 6-7), this short section of Patients' brief substantially overlaps with the previous jurisdictional arguments and is properly addressed as such. If and to the extent necessary, the Court finds the Complaint adequately pleads facts that state a claim for declaratory relief under Rule 12(b)(6).

[8] A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial attack challenging the complaint's allegations or a factual attack challenging the facts upon which the subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations" and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion to a Rule 56 motion." *Id.*

9

The Supreme Court has "repeatedly equated" the DJA's "actual controversy" requirement with Article III of the U.S. Constitution's "case or controversy" requirement." *Surefoot L.C.*, 531 F.3d at 1240. With regard to declaratory judgments, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (2007) (internal quotation marks omitted).

Considering only the record evidence submitted in relation to the Motion to Dismiss, the Court easily concludes that a substantial controversy exists between FAIRCO and Patients regarding whether potential judgments against Stewart in the State Court Actions are covered and/or limited by the Policy. Although Patients contend they have not alleged any conduct that could be deemed deliberate or malicious under Exclusion K, they allege that Stewart "abused his position of trust and confidence for his own advantage." (Mot. to Dismiss, Exs. A, B.) Nordhues seeks punitive damages and accuses Stewart of extreme and outrageous conduct that "transcends the bounds of decency." (*Id.*, Ex. A.) Wink does not seek punitive damages but asserts the tort of "outrage," also known as intentional infliction of emotional distress, and makes identical allegations regarding the extreme and outrageous nature of Stewart's conduct. (*Id.*, Ex. B.) At a minimum, these create a substantial controversy as to application of Exclusions H and K to at least some of Patients' claims.

In addition to the possible application of Exclusions H and K, there is an actual controversy surrounding application of the SMS. Patients were careful not to use the word "sexual" in the petitions in the State Court Actions. However, the SMS provides that "[i]n the event Sexual Misconduct [defined in the Policy as any type of actual, alleged, attempted or proposed physical

10

touching, contact, or activity or attempt threat, suggestion or proposal thereof] is alleged against an Insured at any time, either in a Complaint, during discovery, at trial, or otherwise, any and all causes of action alleged or arising out of the same or related course of Psychiatric Services" are limited to $25,000. (Compl., Ex. A.) Due to the broad language in this provision, FAIRCO has a colorable argument that the SMS may apply notwithstanding the absence of the words "sexual misconduct" in the demand letter or the petitions. In short, FAIRCO has not mischaracterized the State Court Actions to fabricate a controversy over the meaning of the Policy.

In addition, FAIRCO has demonstrated an "injury in fact" based on the following: (1) Patients sent demand letters to Stewart; (2) Stewart is insured by FAIRCO; (3) the State Court Actions against Stewart are currently pending; (4) Patients seek damages for conduct by Stewart that may possibly be excluded under Exclusions K and H or limited by the SMS; (5) FAIRCO is liable for any judgment against Stewart to the extent permitted under the Policy; and (6) due to Stewart's bankruptcy discharge, any judgment will necessarily be paid by insurance proceeds. Courts routinely hold, under similar or even more contingent circumstances, that Article III and the DJA's "injury in fact" requirements are satisfied. *See Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) (explaining that the existence of contingencies, such as whether victim has obtained a final judgment, does not prohibit the Court from issuing a declaratory judgment); *Cont'l Cas. Co. v. Bowen*, No. 2:09-CV-00810-TC, 2010 WL 3743909, at *1 (D. Utah Sept. 22, 2010) ("Federal courts can issue declaratory judgment on the scope of insurance coverage, even if the federal declaratory judgment action concerns some of the same factual questions as the state court action about which coverage is disputed."); *Farmers All. Mut. Ins. Co. v. Willingham*, No. 08-CV-0532-CVE-FHM, 2009 WL 3720023, at *2 (N.D. Okla. Oct. 28, 2009) (finding justiciable

controversy where insurer sought declaration of coverage of a "specific claim" in underlying civil case because declaratory judgment would end the controversy between the insurer and its insured); 22A Am. Jur. Declaratory Judgments § 133 (explaining that, generally, "an insurer's action for a declaration that a liability policy does not cover the claims against its insured is a case of actual controversy sufficient to entertain the action for a declaratory judgment"). Therefore, the Court concludes that (1) FAIRCO has demonstrated a justiciable controversy under the DJA and Article III, and (2) the Court has subject matter jurisdiction over the dispute.

### B. Discretionary Factors

The second hurdle FAIRCO must overcome is persuading the Court, in its discretion, to issue one or more of its requested declaratory judgments. Relevant considerations include whether a declaratory judgment: (1) would settle the controversy; (2) would serve a useful purpose in clarifying the legal relations at issue; (3) is being used merely for the purpose of procedural fencing or to win the "race to res judicata"; (4) would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) is in addition to an alternative remedy which is better or more effective. *Mhoon*, 31 F.3d at 983.

Courts routinely elect to exercise discretion to issue declaratory judgments in insurance coverage proceedings, even where the underlying state court actions are ongoing and present similar factual questions. In *Mhoon*, for example, the trial court declared that the insured acted intentionally rather than negligently and that the insurer therefore had no duty to defend or indemnify, even though the question of intent versus negligence was also pending in state court. *Mhoon*, 31 F.3d at 982. The Tenth Circuit held the trial court did not abuse its discretion, reasoning (1) there was a "live need" for quick resolution of the issue, particularly the duty to defend, and (2) "the coverage

issue, under the trial court's approach . . . involved only a search of the relevant record to ascertain whether there was any triable issue with respect to whether [the insured's] conduct could be termed accidental under the terms of the homeowner policy." *Id.* at 984.

With respect to certain requests for declaratory relief, the Court finds that all the *Mhoon* factors weigh in favor of issuing a declaratory judgment because it will end certain aspects of the coverage disputes, the legal issues are clear and easily settled, and there is no possible encroachment on the State Court Actions. Those requests are addressed in Part III below.

However, in its discretion, the Court declines to issue any judgments on the crux of the dispute – namely, application of Exclusion K and/or the SMS to Patients' medical negligence claims. The controlling factor in the Court's decision is that issuance of a declaratory judgment would unnecessarily encroach upon and potentially cause friction with the State Court Actions. Patients adamantly maintain that they are limiting their State Court Actions to "improper psychiatric techniques of falsely identifying alternate personalities and using witchcraft in [Stewart's] medical treatment of both women" and that this medical negligence occurred prior to and separate and apart from any sexual misconduct. (Resp. to Mot. for Summ. J. 8.) In its discretion, the Court finds that it is in the interest of justice, economy, and comity to decide the coverage question of whether sexual misconduct "is alleged" by Patients following the conclusion of the State Court Actions. Patients are the master of their claims in the State Court Actions and should have the opportunity to "prepare for and prosecute [their] malpractice action[s] without alleging conduct" that implicates the SMS. *See Am. Home Assur. Co. v. Levy*, 686 N.Y.S.2d 639, 791 (N.Y. Sup. Ct. 1999) (denying summary judgment on issue of application of similar sublimit and allowing the victim an opportunity to

13

attempt to prosecute underlying action in a manner that did not implicate sublimit).[9] Although Patients testified about their sexual relations with Stewart in their depositions, this was over the objection of their counsel while being questioned by opposing counsel. Nothing else cited by FAIRCO – including the bankruptcy filing by Wink of which she was not aware or an interrogatory response by Wink generally referencing the Surrender – convince the Court that Patients are somehow misrepresenting their actual intentions for prosecuting the State Court Actions. Nor has FAIRCO convinced the Court that it is the best time for resolution of any coverage issues. Patients, and not FAIRCO, should dictate how they will prosecute their State Court Actions. *See id.* (noting that, just as an insured cannot dictate the terms of the insurance contract, an insurer cannot dictate the course an insured will take in prosecuting a malpractice action).

*Mhoon*'s reasoning is not persuasive in this case. FAIRCO has not requested any declarations regarding its duty to defend. Further, unlike in *Mhoon*, the primary dispute is not whether there exists a triable issue on a disputed fact impacting coverage – *e.g.*, intent versus negligence. It is not disputed that Stewart intentionally engaged in sexual misconduct with Patients during the doctor/patient relationship. The SMS - which is not challenged as ambiguous or void as to public policy – appears to limit coverage for all claims (sexual or non-sexual) where sexual misconduct is "alleged" by a plaintiff. The Court simply finds that the question of whether Patients

---

[9] The Court's approach differs slightly from *Levy* in that, rather than deny summary judgment on the SMS issue, the Court is simply declining to rule at this time in deference to the State Court Actions.

actually "allege" sexual misconduct by Stewart in the State Court Actions is best decided after Patients attempt to prosecute such actions in the limited manner they propose.[10]

### III. Motion for Summary Judgment

Based on the undisputed and clear allegations of the petitions in the State Court Actions and the clear and unambiguous language of the Policy, the Court grants FAIRCO the following declaratory relief:

Nordhues Action:

1.  FAIRCO has no obligation to pay a punitive damages judgment against Stewart due to application of Exclusion H.

Wink Action:

2.  FAIRCO has no duty to indemnify Stewart and no obligation to pay damages or a judgment rendered against Stewart on Wink's claim for "outrage" due to application of Exclusion K.

3.  FAIRCO has no obligation to pay a punitive damages judgment against Stewart due to application of Exclusion H.

4.  FAIRCO has no obligation to indemnify Stewart or pay damages or a judgment to the extent Wink seeks damages as a result of a medical incident that took place prior to January 1, 2007, due to application of the Retroactive Date.

---

[10] Some courts have also inquired as to whether the sexual misconduct is "inextricably intertwined" with the other alleged forms of negligence. *See St. Paul Fire & Marine Ins. Co. v. Gold*, 149 F.3d 1191, at *7 (10th Cir. 1998) (holding that similar exclusion applied because doctor's "other alleged acts of professional malfeasance were inextricably intertwined with the sexual activity"). Assuming this is a relevant inquiry under the Policy, this question is also best decided at the conclusion of the State Court Actions.

Based on the absence of PLICO as a named Defendant and the absence of sufficiently developed arguments, the Court denies summary judgment on FAIRCO's request that the Court declare that the Policy is "excess" over other coverage available to Stewart in the PLICO Policy.

The other requests for declaratory relief in FAIRCO's motion for summary judgment are stayed and held in abeyance pending the outcome of the State Court Actions. Once a final judgment is rendered in either action, the parties are Ordered to file a motion to lift the stay. The Court will then order the parties to submit supplemental evidence, evaluate the entire underlying record for that case, and decide the remaining insurance coverage issues. If, at some point in time prior to the conclusion of the State Court Actions, FAIRCO desires to lift the stay and re-urge its motion based on new evidence not already in this Court's summary judgment record, it shall file a motion to lift the stay.

## IV. Conclusion

Patients' Motion to Dismiss (Doc. 13) is DENIED. FAIRCO's Motion for Summary Judgment (Doc. 58) is GRANTED as to the four declaratory judgments set forth above; DENIED as to the excess coverage issue; and STAYED as to application of Exclusion K and/or the SMS to Patients' medical negligence claims. The Scheduling Order (Doc. 57) and all current deadlines are STRICKEN.

Either party may file a motion to lift the stay at any time they deem proper but no later than two weeks following the conclusion of one or both of the State Court Actions.

SO ORDERED this 31st day of March, 2017.

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**

16